Good morning and welcome. Thank you so much for coming here. This is our last day of sitting here in Portland, and I wanted to especially thank everyone here who's made it so welcoming to be here, and specifically Chase Brearden, Natalie Batiste, Kathy Dodds, Robert Walsh, and all the court security officers who have just been incredibly warm and welcoming and very helpful. So thank you to each of you. Today we had a number of matters that have already been submitted on the record and the briefs. They are United States v. Mahan II, Lemakko Leyva v. Garland, now McHenry, Polyakov v. O'Malley. There's a new name for that defendant as well. Sorry? Kathy, did you? Sorry? Who is the new name? King. Thank you. So those have all been submitted. That leaves two cases for oral argument. We'll start with United States v. Keast, and I'm welcoming all counsel for both cases that if you feel like you said what you needed to say and we have no questions, you are cordially welcome to not use all your time. Okay. With that, let's start with counsel. Good morning. May it please the Court. Ms. Miles, ladies and gentlemen of the gallery. Andrew Kolnetz on behalf of Defendant Pelley, Scott Raymond Keast. Your Honors, the question before the Court is a narrow one, and it is simply, does Mr. Keast's prior conviction require necessarily as an element the use or threatened use of force against another person? And in answering that question, I'd like to direct the Court to a Oregon Court of Appeals decision cited in my brief, and also in a letter, Rule 28J letter I submitted yesterday. That case is State v. Gilbert. And I think Gilbert answers the question for us, and that is because in Gilbert, the defendant was charged with being an ex-con in possession of a firearm with the firearm enhancement language. The defendant argued before the Court of Appeals that the firearm enhancement did not apply because the enhancement would only apply when the threatened use or the use of the firearm facilitated or... Can I ask you, what is your best textual argument against the government's proposal that their intended target requirement isn't implicit in the unlawful use of a weapon with a firearm? I think Gilbert answers that question, Your Honor. The plain text of the statute itself contains the ex-con as a... I mean, I'm sorry, the threatened use of a firearm. The firearm enhancement statute does not contain the victim-specific language that the UUW statute does. But if you do the combination, the fifth element from the firearm enhancement would add that element. Not necessarily, Your Honor. I think that's because the firearm enhancement in 161610, at least under Gilbert, does not have to relate back to the underlying crime in any way. So any use of the firearm, as long as it is contemporaneous or during the commission of the offense, which here is possession with intent to use unlawfully against another, that crime is committed as soon as the possession is conjoined with the unlawful intent. And it can continue... Regardless of any attempted... I'm sorry, Your Honor, I didn't hear you. Regardless of any attempt or actual injury to a victim. Correct, Your Honor. And that possession with intent continues for, it could be moments, minutes, hours, even days, as long as the possession is still conjoined with the unlawful intent. Any use of a firearm during that period, even perhaps accidental, would subject an individual to the enhanced sentence. If we were to agree that the sentencing enhancement should not apply, what would the guideline range be? And what would the projected release date be for your client? Your Honor, he would go from a base offense level of 20 to a 14. I do not have his projected release date. Let me look at it. You can do it on rebuttal if you want to. But it would reduce his total offense level by four levels, which would be a rather dramatic reduction. You said 20 to 14? Is that six? Six offense levels, I think you're saying. Do you have a view on the theoretical versus realistic possibility burden? I know the law is not exactly clear. Yes, Your Honor, I do. I think the realistic probability case law in cases involving the categorical approach has been abrogated. Abrogated or just that it doesn't apply when the statute, the text is clear? Completely abrogated seems like an overreach. I would argue it has perhaps been abrogated, but in any event, the case cited in one of the government's 28-J letters, the DeFrance case, I think specifically addresses this. But that didn't say it was completely abrogated, right? No, it didn't. Footnote 7 in that case indicates that at least there is some belief that the realistic probability test may no longer be viable in a categorical Taylor analysis. It's in footnote 7. However, the court is absolutely correct. Assuming that the realistic probability test still does survive, if the statute, as interpreted by state court authorities and within the plain text, is plainly overbroad, reaches conduct that wouldn't be the use or the threatened use of force against the person of another, then the realistic probability test is not required. All right. I don't have any more questions. Let me see if my colleagues do. Nope. Okay. You have 4 minutes and 20 seconds left for rebuttal. Thank you. May it please the Court. Suzanne Miles for the United States. I believe that our briefing has addressed most of the issues that my opposing counsel has raised. I'm happy to answer any concerns or questions that the court has, but I don't want to use your time if there's nothing I can do to help. I don't think you responded to Gilbert, did you, in your brief? I know you did a 28-J, but I didn't really see. I think Gilbert is a hurdle for the government here. You want to address that, please? Sure. Gilbert does nothing more than what Dentel already does, which is distinguish UUW with a firearm from felon in possession with a firearm. The with a firearm enhancement aggravates whatever the underlying crime is. Felon in possession of a firearm doesn't require use or intent to threaten or harm another person. There are two different things, intent and use. Felon in possession of a firearm does not require any intent to harm another person. And Dentel says that specifically, that the element that UUW with a firearm has that felon in possession does not have is the intent to use a weapon unlawfully against another person. A felon in possession who is possessing a firearm goes to a firing range and shoots at a paper target has committed felon in possession of a firearm with a firearm. They've discharged the firearm. They're not allowed to hold it. And so there's nothing about that that requires the intent to use unlawfully against another person. UUW has that element. And that's what makes it a crime of violence where felon in possession, even if aggravated. UUW requires intent to use it, but not actual use against the intended target. If the enhancement implies it requires use, but not in furtherance of the underlying UUW. Is that correct? It requires use during the commission. So with intent, but not in furtherance of, correct? I don't see a distinction between in furtherance of and during in the context of UUW. So you have to have the firearm. So the elements once enhanced. Do you have an Oregon State case that interprets the text as you're suggesting? I do. So once you take the elements and you import the definition of use for unlawful use of a weapon that Ziska provides us, which is to injure or threaten to injure. And then you also use the interpretation of use of a firearm that Hawkins and Harris provide with regard to the gun minimum enhancement. You're left with these elements, which is you need to fire or threaten to fire a gun while possessing it with the intent to injure or threaten to injure a specific other person. But you don't need to fire it at another person. So what that creates, Your Honor, and I understand that that's exactly what the defense is arguing. They're arguing for a hyperliteral interpretation of the statute. No Oregon court has interpreted it that way. Oregon court has said that's not how it should be interpreted, though. Correct? No Oregon court has ever been posited with the question, as far as I can tell. I've never seen an Oregon court apply the statute that way, nor any Oregon, nor has the government ever provided to the court an argument that UUW with a defendant's hypothetical is essentially a thought crime. If you have a firearm, you're standing completely by yourself, you discharge it, but while you do that, you have in your mind an intent to harm someone else, then under their incredibly literal reading... Is the underlying crime a thought crime? It's just intent, possession with intent to harm another. If it hasn't ever been communicated, no Oregon court and no Oregon prosecutor, as far as I can tell, has ever applied it that way. I think, Your Honor, what we have at our hands here is the kind of ambiguity in the plain text that allows us, then, to go to Duenas-Alvarez. It lets us do a couple things. Under de France, if we're looking even just at the plain text to see whether it's unambiguous, we can go to the legislative history. The legislative history of UUW, the possession prong, and the firing in an urban area prong.  legislative history, UUW is not a crime offense. You can see that in Chamber... I think it's Chambers. I'm sorry, it's not. It's... It was Crawford, which was one of our 28-J letters. What you see in Crawford is the Oregon court distinguishing two aspects of UUW. The possession prong and the firing in an urban area prong. And what the court said, looking at the legislative history, is that under subsection A, which is what we're looking at here, this crime was always intended to prevent a risk of injury to a specific other victim. And you see that need for a specific victim in Garibay. You see it in McAuliffe to some extent. And that's in contrast with what the Oregon legislature did under subsection B, which is firing a gun in an urban area, a drive-by shooting, where what it was trying to prevent was just the potential risk of harm to a bystander. And so UUW itself, subsection A, is about violence against a specific victim. You add into that the intent of the firearm enhancement, which, by the way, adds on a mandatory minimum of five years. And so what you have then is a substantial crime with a legislative history that is clearly focused and all of the case law that interprets the terms in between, use being very strictly interpreted to mean discharging or threatening to discharge with regard to the UUW or, I'm sorry, with the firearm enhancement. Use in UUW itself being very strictly interpreted to mean threaten or, I'm sorry, injure or intend to injure, threaten to injure in Ziska, a tightly interpreted statute aimed at firearm and gun violence. And the defense is asking you to read this more broadly. If we were standing in front of the Oregon Supreme Court right now and we were arguing about the interpretation of this statute, my colleague would be arguing very hard for the rule of lenity, and I would be hard-pressed to have anything to say about it. If with those two competing interpretations, the rule of lenity requires that this court read the statute more narrowly, exactly as the Oregon courts have done, and I encourage this court to do the same thing. And once we have that ambiguity, you can use those canons of statutory interpretation, you can use rule of lenity, and you can use Duenas-Alvarez, and you can look for whether this is a theoretical possibility or a realistic possibility or realistic probability. And that is where 20, 30, maybe 40 years of Oregon case law shows you that never once has Oregon interpreted this law or enforced it, particularly with a five-year mandatory minimum for the firearm enhancement in the broad way that the defense is now asking you to do. There are no cases where the example given by the defendant of the intent to use the gun against someone and trying it out by shooting it in the ground to make sure that it uses, that by itself has never been prosecuted. That would be, I'm sorry, Your Honor. No, Your Honor, that would be unlawful discharge of a weapon, which is a single case. The defense hasn't provided one. And what I have done is a full survey of Oregon case law on UUW by itself, UUW with a firearm, and all I have been able to find is what I provided to the court, which is these are cases where guns are discharged or they're threatened at a victim. So the realistic possibility idea applies in this kind of a case? I believe it does. If you accept that the reading that the defense is giving you and I posit that it could. I'm just not sure that's what the Supreme Court, I mean, because the Supreme Court has also said we're not supposed to, you know, when the statute on its face is overbroad, we're not supposed to ask for an example because of the reality of plea bargaining and all sorts of other things. It's not realistic to expect an example to be provided. And I would posit, Your Honor, what France tells us is that if there is ambiguity in the plain text and here that ambiguity is raised, if you take the interpretation that defense is offering, that incredibly literal reading of this statute as being a plausible interpretation of it, compared with the interpretation that every Oregon court has used this statute to say, which is also a plain reading of this statute, then that ambiguity can be resolved through statutory interpretation, through legislative history, and through looking not only at how Oregon has defined the terms within the statute, but also how Oregon has applied it. But if we disagree with you that there's ambiguity and we think it's evident from the text, then you would agree by saying that France and Taylor were not required to show or shouldn't require the defendant to show a realistic possibility, correct? If you think that there is only one reading of this text that is plausible, then yes. And, Your Honor, I see that I'm over time, but could I answer your question a little bit more completely? Just briefly. Thank you. Okay. So I would encourage you to look at the cases that DeFrance cites where it is evident. Greisel, Chavez, Soles, Vidal, where the words of the statute itself created, added something that wasn't in a Federal counterpart. Not just Amir could reread these words differently. Thank you. I don't have any further questions. Any further questions from my colleague? No. Thank you very much. Thank you. Just very briefly, Your Honors. It's the defendant's position that the two statutes are clear, unambiguous. They are plain language and simple. There is nothing to be read into them. The government is requesting the Court read in an additional element that the use or threatened use of a firearm must be directed at the person of another. Oregon Court of Appeals in Gilbert has answered the question. They specifically state nothing in the language of the firearm enhancement requires that the use or threatened use of a firearm be in furtherance or be in furtherance of the underlying felony charged. That's the answer. There is no requirement that the use or the threatened use of the firearm need to facilitate or be in furtherance of the possession or use. It simply has to be discharged. The firearm simply has to be discharged contemporaneous with the elements of the underlying offense. We know that the variant under which Mr. Keist was charged has already been held. The unenhanced variant has already been held and will not be a crime of violence. The case is very similar to that in DeFrance. In DeFrance, neither the prosecution nor the defense could point to a single case where the Montana statute was interpreted as the defense proposed. That was immaterial. I would ask the Court to simply look at the plain language of the statute.
judges: BEA, KOH, SUNG